THE KNICKERBOCKER ICE COMPANY, Appellant, *v.* THE FORTY-SECOND STREET AND GRAND STREET FERRY RAILROAD COMPANY et al., Respondents.

1. NEW YORK CITY — TITLE TO LANDS UNDER WATER. The title of the city of New York in the tideway and the submerged lands of the Hudson river granted under the Dongan and Montgomerie charters and acts of the legislature (L. 1807, ch. 115; L. 1826, ch. 58; L. 1837, ch. 182) was not absolute and unqualified, but was and is held subject to the right of the public to the use of the river as a water highway.

2. TITLE TO LANDS IN THE PUBLIC STREETS HELD IN TRUST. The title of the city of New York in and to the lands within its public streets is held in trust for the public use.

3. RIGHTS OF GENERAL PUBLIC OVER PLACES WHERE LAND HIGHWAYS AND NAVIGABLE WATERS MEET. The general public has a right of passage over the places where land highways and navigable waters meet; and when a wharf or bulkhead is built at the end of a land highway and into the adjacent water, the highway is by operation of law extended by the length of the added structure.

4. POWER OF LEGISLATURE TO PRESCRIBE THAT SUBMERGED LAND SHOULD BE USED FOR STREETS. The legislature had the power in granting additional submerged lands to the city of New York (L. 1837, ch. 182) to prescribe that such lands should be used for the purpose of an exterior street to which other streets then intersecting the river should be extended.

5. CONVEYANCE BY THE CITY OF NEW YORK OF PIER IN FORTY-THIRD STREET NOT A CONVEYANCE IN FEE OF LAND COVERED BY THE PIER — EFFECT OF COVENANTS CONTAINED IN PRIOR DEEDS OF ADJOINING LAND UNDER WATER TO SAME GRANTEE — ACTION PREDICATED UPON TITLE IN FEE NOT MAINTAINABLE. A conveyance by the city of New York in 1852 of a pier situated in Forty-third street in the Hudson river, which street was laid out under the act of 1807 to high-water mark, and by the act of 1837 was extended to the exterior line of the city, containing the following description : "Beginning at the point formed by the intersection of the northerly side of 43rd street with the easterly line or side of 12th Avenue; running thence southerly along the easterly side of 12th Avenue to the northerly side of said pier; thence westerly 211 feet three inches; thence southerly 40 feet five inches; thence easterly 212 feet two inches, to the easterly side of 12th Avenue, and thence southerly to a point where the southerly side of 43rd street intersects the said 12th Avenue. Together with the extent of the present width of the street with the right of wharfage thereon, and together with all and singular the tenements, hereditaments," etc., subject, however, to the right of the city to order the pier extended into the river at the

expense of Lindsley, or to extend the pier at the city's expense, or to grant the right to do so to other parties if Lindsley should fail to make such extension when directed so to do, "in which case the right to wharfage, etc., at the portion of the pier extended shall belong to the parties at whose expense the extension shall be made," conveys, not the absolute fee to the land covered by the pier, but the incorporeal hereditament attached to the fee, *i. e.*, the right to maintain a pier and to collect wharfage at the foot of Forty-third street in the Hudson river, whenever that point should be located by lawful authority, since the city held the land under a public trust and could not convey it in contravention thereof, of which fact the grantee was chargeable with constructive notice, especially where by prior deeds to him of adjoining land under water, the city expressly reserved so much thereof as formed parts of Twelfth and Thirteenth avenues and Forty-third street, and he covenanted therein that at the request of the city he would construct bulkheads and that the streets should always remain public streets, and, therefore, he had actual knowledge of the limitations upon his title. Whatever, therefore, may be the rights acquired by his successors in title, they include no right to maintain an action which can only be predicated upon a title in fee.

*Knickerbocker Ice Co.* v. *Forty-second St. & G. S. F. R. R. Co.*, 85 App. Div. 530, affirmed.

(Argued October 20, 1903; decided November 10, 1903.

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 22, 1903, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Albert Stickney* and *M. Edward Kelley* for appellant. Assuming the validity of the deed of 1852, according to its terms, the right of the plaintiff to equitable relief, based on the inadequacy of any remedy at law, cannot be seriously questioned, unless the rights of the plaintiff under the deed of 1852 be restricted by the covenants contained in the prior deeds of 1850. (*Munn* v. *People*, 94 U. S. 113; *People* v. *N. Y. C. R. R. Co.*, 28 Hun, 543; *Gardner* v. *Vil. of Newburg*, 2 Johns. Ch. 162; *Sage* v. *City of Brooklyn*, 89 N. Y. 189; *Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Williams* v.

*Mayor, etc.,* 105 N. Y. 419; *Maxmilian* v. *Mayor, etc.,* 62 N. Y. 160; *Ham* v. *Mayor, etc.,* 70 N. Y. 459; *Smith* v. *City of Rochester,* 76 N. Y. 506; *F. Ins. Co.* v. *Vil. of Keeseville,* 148 N. Y. 46.) The city, under its different grants from the state, acquired in the first instance the ownership of the land under water in front of high-water mark, with the power to convey its property rights in that land under water, and any superstructure thereon, to private individuals, until the change in the policy as to the city water front, which was created by the act of 1871 establishing the dock department. (*Langdon* v. *Mayor, etc.,* 93 N. Y. 129; *Kingsland* v. *Mayor, etc.,* 110 N. Y. 569; *Williams* v. *Mayor, etc.,* 105 N. Y. 419.) The power of the city to convey the "pier" by the deed of 1852 is free from doubt, and cannot be questioned under a contention that the "pier," either as dry land or as land under water, was public property, or property affected by a right of use in "the public." (*City of Cohoes* v. *D. & H. C. Co.,* 134 N. Y. 397; *Pearsall* v. *Post,* 20 Wend. 111; *Post* v. *Pearsall,* 22 Wend. 425; *Wetmore* v. *A. L. Co.,* 37 Barb. 70; *Wetmore* v. *B. G. L. Co.,* 42 N. Y. 384; *Langdon* v. *Mayor, etc.,* 93 N. Y. 129; *Williams* v. *Mayor, etc.,* 105 N. Y. 419; *Kingsland* v. *Mayor, etc.,* 110 N. Y. 569; *Mark* v. *Vil. of West Troy,* 151 N. Y. 453; *People* v. *Laimbeer,* 5 Den. 9; *People* v. *N. Y. C. & H. R. R. R. Co.,* 28 Hun, 543.) The legal character of the "pier" in question, as land under water with a superstructure resting thereon, and not a public "street," is beyond question. (*Matter of M. P. Ground,* 60 N. Y. 319; *Matter of Rhinelander,* 68 N. Y. 105; *Wagner* v. *Perry,* 47 Hun, 516.) The contention of the defendants as to a want of power in the city to convey the "pier" in question to a private individual wholly ignores the well-recognized legal distinction between the private ownership of property and its public use. (*Munn* v. *Illinois,* 94 U. S. 113; *People* v. *N. Y. C. R. R. Co.,* 28 Hun, 543; *Langdon* v. *Mayor, etc.,* 93 N. Y. 129; *Mayor, etc.,* v. *Hart,* 95 N. Y. 443; *Williams* v. *Mayor, etc.,* 105 N. Y. 419; *Kingsland* v. *Mayor, etc.,* 110 N. Y. 569.)

The performance by Lindsley's grantees of the covenants contained in the earlier deeds of 1850, providing for the construction of streets, bulkheads, piers and wharves, has now been made impossible by the acts of 1871, nor does the resolution of the dock department, which is set up as a justification of the intended destruction of plaintiff's pier, call for such construction as was contemplated by those covenants, and agreed to be performed by the grantees. (*Palmer* v. *Gould*, 144 N. Y. 671; *Benedict* v. *Lynch*, 1 Johns. Ch. 370; *Phillips* v. *Berger*, 8 Barb. 527.) Even if, however, the performance of the covenants in the deeds of 1850 were still possible, or had been really required by any action of the dock department, the obligation of the covenants contained in the deeds of 1850 was, as to Forty-third street, essentially modified, if not wholly abrogated, by the subsequent conveyance of the "pier" itself by the deed of November 11, 1852. (*Langdon* v. *Mayor*, etc., 93 N. Y. 129.)

*James A. Deering* and *Henry A. Robinson* for Forty-second Street and Grand Street Ferry Railroad Company, respondent. Assuming that the plaintiff has a good title to the pier and the ground upon which it stood when this action was begun, nevertheless its right to use the same was subject to the conditions and covenants contained in the grant of July 1, 1850, to Lindsley, the plaintiff's predecessor in title, and the statutes then in force and subsequently made under which the city could lawfully require the railroad company to make such water-front improvements as the city might thereafter deem proper. Such improvements cannot be enjoined. (*Cox* v. *State*, 144 N. Y. 405; *People* v. *Vanderbilt*, 26 N. Y. 287; *Whitney* v. *Mayor*, etc., 6 Abb. [N. C.] 329; *I. R. R. Co.* v. *Illinois*, 146 U. S. 453; *Slingerland* v. *I. C. Co.*, 169 N. Y. 60.) The plaintiff has no title to the pier in question or to the ground upon which it stood. It has nothing upon which to base a claim to equitable relief for any contemplated interference with property rights. (*Bruen* v. *M. R. Co.*, 39 N. Y. S. R. 36; *Dean* v. *M. El. R. Co.*,

119 N. Y. 540 ; *Hughes* v. *M. R. Co.*, 130 N. Y. 14 ; *H. R. R. Co.* v. *Loeb*, 7 Robt. 418 ; *S. W. Co.* v. *City of Syracuse*, 116 N. Y. 167 ; Tiedeman on Mun. Corp. § 169 ; *Donovan* v. *City of New York*, 33 N. Y. 291 ; *Lyddy* v. *Long Island City*, 104 N. Y. 218 ; *McDonald* v. *Mayor, etc.*, 68 N. Y. 23 ; *Parr* v. *Vil. of Greenbush*, 72 N. Y. 463 ; *Martin* v. *Mayor, etc.*, 1 Hill, 545.)

*George L. Rives, Corporation Counsel* (*Theodore Connoly* and *E. J. Freedman* of counsel), for City of New York et al., respondents. The plaintiff has failed to prove any cause of action entitling it to equitable relief, and under the pleadings and evidence no other relief can be granted. (*K. I. Co.* v. *F. S. S. R. R. Co.*, 16 J. & S. 499 ; *Munson* v. *Reid*, 46 Hun, 403 ; *Wells* v. *Garbutt*, 132 N. Y. 436.) Plaintiff had no title to the pier, to the land under it nor to the adjacent lands, and nothing less would support the action. (*People* v. *Laimbeer*, 5 Den. 9 ; *Matter of City of Brooklyn*, 73 N. Y. 179 ; 2 Dillon on Mun. Corp. [4th ed.] § 650 ; *Brooklyn* v. *Armstrong*, 45 N. Y. 234 ; *S. V. O. Asylum* v. *City of Troy*, 76 N. Y. 108 ; *Kane* v. *N. Y. El. R. R. Co.*, 125 N. Y. 183 ; *People* v. *Mallory*, 46 How. Pr. 256 ; *Taylor* v. *A. M. Ins. Co.*, 37 N. Y. 275 ; *Marshall* v. *Guion*, 11 N. Y. 461 ; *Comrs. of Pilots* v. *Clark*, 33 N. Y. 251 ; *Radway* v. *Briggs*, 37 N. Y. 256.) The city did not convey, nor attempt to convey, any land by the execution of the deed to the pier. (*Wheeler* v. *Spinola*, 54 N. Y. 388.)

WERNER, J. Under claim of title to a pier and the lands occupied by it, at Forty-third street and the Hudson river, in the city of New York, the plaintiff herein commenced this action and obtained an injunction *pendente lite*, restraining the defendants from effecting certain harbor improvements projected, under legislative authority, by the city of New York. The decision of the trial court was in the short form and was adverse to the plaintiff. The judgment entered upon that decision has been unanimously affirmed by the Appellate

Division. Many interesting questions have been most ably presented on both sides, but in its last analysis the case turns upon the nature and extent of the grant to the plaintiff. If, as the plaintiff contends, that grant purported to vest in it an absolute fee to the *locus in quo*, then numerous other questions affecting the validity of the grant remain to be considered. If, on the other hand, the plaintiff never had a title in fee to the lands in controversy, then this action must fail, for the plaintiff's claim to the relief asked for in the complaint can only be predicated upon the title which he asserts. A short recital of a few salient facts will suffice to show why we think the judgment of the courts below must be affirmed.

Under the Dongan and Montgomerie charters the city of New York acquired title to the tideway surrounding the island of Manhattan. In 1807 the state granted to the city a strip of land under water along the westerly side of the island, which extended from low-water mark westerly into the Hudson river, a distance of 400 feet. On the Hudson river side of the island the city was, therefore, the owner of the lands between high-water mark and low-water mark and for a distance into the river of 400 feet beyond low-water mark.

This was the situation when, under the act of 1807, the street commissioners' map of 1811 was filed laying out Forty-second and Forty-third streets from high-water mark on the East river to high-water mark on the Hudson (or North) river.

The next chapter in historical progression is the act of the legislature of 1837 (Ch. 182) entitled "An act to establish a permanent exterior street or avenue in the City of New York along the easterly shore of the North or Hudson's River, and for other purposes." Section 1 of that act approved of the map made by George B. Smith in 1837 pursuant to a resolution of the board of aldermen, upon which Thirteenth avenue was laid out as the permanent exterior line along the easterly shore of the Hudson river between Hammond (W. 11th) street and 135th street. Section 2 provided that the streets southerly of and including 135th street, as laid out under the act of 1807, " shall be continued and extended westerly along

the present lines thereof from their present terminations on the said map or plan respectively to the said Thirteenth Avenue." Section 3 granted to the city the lands under the waters of the Hudson river between Hammond (11th) street on the south and 135th street on the north, and between the westerly boundary of the 400 foot strip, above referred to, on the east, and the westerly boundary of Thirteenth avenue on the west. Section 4 gave to the owners of adjoining uplands certain pre-emptive rights in the lands under water.

In 1837 the city was, therefore, the owner of the lands extending from high-water mark to Thirteenth avenue, subject to the legislative command that the streets enumerated in the statute, among which were Forty-second and Forty-third streets, " shall be continued and extended westerly along the present lines thereof from their present terminations * * * to the said Thirteenth Avenue."

Pursuant to the plans outlined in the act of 1837 the city, in 1837 and 1838, acquired the uplands necessary to open Forty-third street from high water at the East river to high water at the Hudson river.

In 1844 an ordinance was passed providing for the creation of a sinking fund for the redemption of the city debt and regulating the powers of the commissioners of the sinking fund. It authorized the sale, by the commissioners, of such corporate lands only as were not reserved for the public use (sec. 17) and directed that all grants thereof should contain the usual covenants in relation to streets and avenues passing through them; and for the building and maintenance of bulkheads and wharves and the collection of wharfage, etc. This ordinance was confirmed by the legislature in the enactment of chapter 225, Laws of 1845.

In 1848, 1849 and 1850 Caleb F. Lindsley became the owner of the uplands east of high-water mark on the Hudson river between Forty-second and Forty-third streets.

The foregoing chronological recital of events now brings us to the deeds upon the construction and effect of which the rights of the parties directly depend.

In 1850 the city of New York, by two separate grants, conveyed to Lindsley the lands under water between Forty-second and Forty-third streets, subject to the covenants expressed in the deeds. The city reserved out of the premises granted so much thereof as formed parts of Twelfth and Thirteenth avenues and Forty-third street. The lines and boundaries of the lands granted were referred to as particularly described and designated on a map which was attached to, and made a part of, the deeds. This map shows the avenues and streets mentioned in the deeds as laid out under the plan of 1807 as amended in 1837. The grantee covenanted, upon request or direction of the grantor, to construct bulkheads and streets, to make pavements and sidewalks, and to keep them in repair for the use of the general public. The grantee further covenanted that said streets and avenues should forever remain public streets for the use of the public, the same as other streets in the city.

The grants of 1850 to Lindsley were followed by another grant to him in November, 1852, of the pier in controversy. This last grant was made pursuant to a resolution of the board of aldermen and the commissioners of the sinking fund, to the effect that the pier at the foot of Forty-third street, with the extent of the present width of the street, be sold to Lindsley for the consideration of $8,000.00, and the description in the deed was as follows: " Beginning at the point formed by the intersection of the northerly side of 43rd street with the easterly line or side of 12th Avenue; running thence southerly along the easterly side of 12th Avenue to the northerly side of said pier; thence westerly 211 feet three inches; thence southerly 40 feet five inches; thence easterly 212 feet two inches, to the easterly side of the 12th Avenue, and thence southerly to a point where the southerly side of 43rd street intersects the said 12th Avenue. Together with the extent of the present width of the street with the right of wharfage thereon, and together with all and singular the tenements, hereditaments," etc., subject, however, to the right of the city to order the pier extended into the river at

the expense of Lindsley, or to extend the pier at the city's expense, or to grant the right to do so to other parties if Lindsley should fail to make such extension when directed so so do, "in which case the right to wharfage, etc., at the portion of the pier extended shall belong to the parties at whose expense the extension shall be made."

The grants above referred to were followed by the creation of the department of docks in 1870 with authority to adopt a system of water-front improvements, and in 1871 that department adopted a plan which was thereafter approved and adopted by the commissioners of the sinking fund. Under this plan a new bulkhead or exterior line was established considerably east of Thirteenth avenue and 150 feet west of the westerly side of Twelfth avenue.

In 1873 the city granted to the plaintiff, which by various mesne conveyances had acquired Lindsley's title to the pier in 43d street, a permit to extend and widen the pier. Under this permit the plaintiff agreed to pay an annual rental of $100.00 for the land occupied by the extension, and to waive all claims for damages in case the city should take the land covered by the extension for permanent water-front improvement.

Pursuant to the plan adopted by the city authorities the pier was, in 1873, widened and extended outward about 300 feet beyond the westerly end of the old pier.

In December, 1890, the department of docks adopted a resolution directing the defendant, the Forty-second Street Railroad Co., which by various mesne conveyances had acquired title to the land below high-water mark next south of the pier, to construct a bulkhead or sea wall between the middle line of 43rd street and the middle line of 42nd street on the North (or Hudson) river, and to do the necessary filling in, according to the plan adopted by the city authorities in 1871.

Thereupon, in 1891, this action was commenced. This event was followed by a number of others of historical interest, but of no important bearing upon the disposition which we think must be made of this case.

We proceed at once, therefore, to consider the effect of the conveyance under which the plaintiff claims title, and this necessitates an occasional reference to some of the proceedings above enumerated.

There are several fundamental facts which must be kept in view in the effort to adjust the rights of the parties to this litigation. *First.* The title of the city of New York in the tideway and the submerged lands of the Hudson river granted under the Dongan and Montgomerie charters and the acts of the legislatures of 1807, 1826 and 1837, was not absolute and unqualified, but was and is held subject to the right of the public to the use of the river as a water highway. (*Sage* v. *Mayor, etc., of N. Y.,* 154 N. Y. 70; *Matter of City of New York,* 168 N. Y. 139.) *Second.* The title of the city of New York in and to the lands within its public streets is held in trust for the public use. (*Story* v. *N. Y. El. R. R. Co.,* 90 N. Y. 122; *Kane* v. *N. Y. El. R. R. Co.,* 125 N. Y. 165.) *Third.* The general public has a right of passage over the places where land highways and navigable waters meet; and when a wharf or bulkhead is built at the end of a land highway and into the adjacent waters, the highway is by operation of law extended by the length of the added structure. (*People* v. *Lambier,* 5 Denio, 9; *Matter of City of Brooklyn,* 73 N. Y. 179.) *Fourth.* It was competent for the legislature in granting additional submerged lands to the city of New York in 1837, to prescribe that such lands should be used for the purposes of an exterior street, to which other streets then intersecting the river should be extended.

In the light of these observations let us consider again the situation as it was in 1850 and 1852 when the grants to Lindsley were made. By the act of 1837 the legislature had directed that Forty-third street "shall be" extended to Thirteenth avenue. The title to the lands within the lines of Forty-third street and below high-water mark, being then in the city of New York, this legislative command was in effect an immediate application of such lands to the purpose for which the grant of 1837 was made. The almost immediate

27

institution of condemnation proceedings to acquire the uplands necessary to actually open Forty-third street to high-water mark was a distinct recognition of the city's duty in the premises, and when those proceedings were completed in 1838 they carried with them the public right of access to the river, either at high-water mark or at the end of the pier if it was then in existence. If the pier was not then in existence, the same result was, of course, accomplished when it was built. (*People* v. *Lambier* and *Matter of City of Brooklyn*, *supra*.)

The deeds of 1850 were taken by Lindsley under covenants which expressly provided for the continuance of the streets and avenues laid out on the Smith map of 1837, and under constructive knowledge of the limitations which the ordinance of 1844, as confirmed by the act of 1845, had placed upon the powers and duties of the commissioners of the sinking fund.

What, then, was the effect of the deed of 1852? The grantee therein named was the same as in the deeds of 1850. He had actual knowledge of the covenants expressed in those deeds, and was chargeable with constructive notice of the public character of the property described in the deed of 1852, the public trusts upon which it was held by the city, and the limitations upon the powers of municipal officers in respect of such property. (*Donovan* v. *Mayor, etc., of N., Y.*, 33 N. Y. 291; *Lyddy* v. *Long Island City*, 104 N. Y. 219.) In addition to this, the description in the grant did not inclose the interior or shore end of the pier. The city expressly reserved the right to order the pier extended by the grantee, or, in case of his failure to comply with such order, to make the extension itself or through others to whom it might grant the right, and, in the latter event, the rights of wharfage, etc., were to belong to those who made the extension. These things are not only inconsistent with the idea that the grant of 1852 conveyed an absolute fee, but they speak with most persuasive force of the real purpose and effect of the grant, which was to convey to the grantee the right to maintain a pier, and to collect wharfage, etc., at the foot of Forty-third street in the Hudson river, wherever that point should be located by law-

ful authority.   It was the incorporeal hereditament attached to the fee, and not the fee itself, that was conveyed.   Under this construction of the grant the rights of all concerned are recognized and preserved.   The city holds the title which it never had the right to alienate.   The plaintiff, as the grantee's successor in title, has the right to follow the lawful extension of Forty-third street for the purpose of maintaining a pier and collecting its revenues.   The Forty-second Street R. R. Co., as successor to the title, rights and obligations of the grantee under the deeds of 1850, can perform the covenants of these deeds and reap the benefits which may accrue therefrom.

This construction of the grant of 1852 is, morever, in harmony with our decision in the case of *Langdon* v. *Mayor, etc., of N. Y.* (93 N. Y. 129), to the effect that a grant of the right of wharfage is property, the possession of which can only be resumed by the state or municipality, by due process of law and upon proper compensation.   Thus, it will be seen, that whatever the rights of the plaintiff may be in matters of substance or procedure, it cannot maintain this action, for it is predicated upon an alleged title in fee that does not exist, and ignores the covenants which effectually bar the relief herein prayed for.   Having arrived at this conclusion it is neither necessary nor pertinent to suggest what other proceedings may, or should be, instituted by the plaintiff, for such other proceedings may be affected or controlled by some of the events which have transpired since 1873, but which have no legitimate bearing upon the case now before us.

The judgment of the court below should be affirmed, with costs.

PARKER, Ch. J., GRAY, HAIGHT, MARTIN, VANN and CULLEN, JJ., concur.

Judgment affirmed.