American Ice Company, Appellant, *v.* The City of New York et al., Respondents.

New York city — construction of a pier at foot of street in North river — construction of conveyances and grants to plaintiff — validity of action by city authorities — extent of liability of city for interference with plaintiff's rights.

The city of New York in 1852, by deed, conveyed to one Lindsley, a pier at the foot of West Forty-third street by metes, bounds and measurements. The deed contained the following clause: "Subject to the rights of the parties of the first part to order said pier extended into the river at the expense of the said party of the second part whenever and in whatever way they may see fit; reserving to the party of the first part the right to extend said pier at the expense of the City of New York, or to grant the right to do so to other parties, if the said party of the second part fail or neglect to extend said pier when ordered so to do; in which case the right of wharfage, etc., at the portion of the pier extended shall belong to the parties at whose expense the extension shall be made." Thereafter, the owner of the pier was ordered to and did extend the same into the river. Plaintiff, by mesne conveyances, obtained title to the pier. *Held*, that plaintiff was the grantee of the right to maintain a pier and to collect wharfage, etc., at the foot of Forty-third street wherever that point should be located by lawful authority; that the grant made by the city was a valid one; that the rights of plaintiff are to be measured by the original pier as enlarged by the extension, and plaintiff, upon being deprived of that right by the city, was entitled to compensation therefor.

*American Ice Co.* v. *City of New York*, 156 App. Div. 945, reversed.

(Argued January 31, 1916; decided March 14, 1916.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 12, 1913, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*M. Edward Kelley* and *Charles I. McBurney* for appellant. The right of the plaintiff to maintain a pier at the foot of West Forty-third street of dimensions at least equal to those of the original pier granted by the city to Lindsley, is no longer open to question. (*Knickerbocker Ice Co.* v. *F. S. St. Ry. Co.*, 176 N. Y. 408; *Matter of Mayor, etc.*, 193 N. Y. 503; *American Ice Co.* v. *City of New York*, 193 N. Y. 573; *Matter of Mayor, etc.*, 121 App. Div. 702.) The ice company having extended the pier from its original length of 212 feet for a further distance of 300 feet by direction of the city, pursuant to the covenants of the deed of 1852, it thereupon became vested, by the provisions of the deed of 1852, with the right to maintain a pier of the extended dimensions, as fully as if the extended pier had been conveyed in that deed. (*Williams* v. *Mayor, etc.*, 105 N. Y. 419; *Langdon* v. *Mayor, etc.*, 93 N. Y. 150; *Matter of Mayor, etc.*, 193 N. Y. 519.)

*Lamar Hardy, Corporation Counsel* (*Terence Farley, Charles D. Olendorf* and *Henry W. Mayo* of counsel), for respondents. The only authority vested in the mayor and the clerk of the common council, by the resolution of the commissioners of the sinking fund of November 11, 1852, was to execute a deed to Lindsley conveying to him the pier at the foot of West Forty-third street, with the extent of the present width of said street, for the consideration therein expressed. (*Town of Westchester* v. *Davis*, 7 Hun, 647; *De Forest* v. *Walters*, 78 Hun, 611; 28 N. Y. Supp. 831; 153 N. Y. 229; *Taylor* v. *Beebe*, 3 Robt. 262; *City of Tiffin* v. *Shawhan*, 43 Ohio St. 178; *Urch* v. *City of Portsmouth*, 69 N. H. 162; *Still* v. *Trustees of Lansingburgh*, 16 Barb. 107; *Morgan* v. *Johnson*, 106 Fed. Rep. 452; 191 U. S. 55; *Long* v. *Louisville & N. R. Co.*, 21 Ky. L. Rep. 463; *Merrill* v. *Burbank*, 23 Me. 538; *Osborne* v. *Tunis*, 25 N. J. L. 634; *City of Galveston* v. *Hutches*, 76 S. W. Rep. 214.) The department

of docks had no authority, either by virtue of the convey-
ance of November 11, 1852, or the statute which created
it, to authorize the plaintiff's predecessor in title to extend
the pier. (L. 1871, ch. 574, § 6; *Cunard S. S. Co. v.
Voorhies,* 50 N. Y. Super. Ct. 253.) The resolutions of
the department of docks of September 25, 1873, and
November 21, 1873, assuming their validity, did not con-
fer upon the plaintiff's predecessor in title a perpetual
franchise to maintain a pier 512 feet long at the foot of
West Forty-third street. (*Matter of Mayor, etc.,* 186
N. Y. 254; *Matter of City of New York,* 124 App. Div.
465; 192 N. Y. 539; *Matter of Mayor, etc.,* 45 N. Y. S. R.
334; 135 N. Y. 254; *Matter of N. Y. C. & H. R. R. R.
Co.,* 77 N. Y. 248; *Williams v. Mayor, etc.,* 105 N. Y.
419; *Bedlow v. N. Y. Floating Dry Dock Co.,* 112 N. Y.
263; *Mayor, etc., of New York v. Law,* 125 N. Y.
392.)

HOGAN, J. This action was brought by plaintiff to
restrain the defendants from constructing a pier at the
foot of West Forty-third street, North river, in the city
of New York, so as to interfere with the right of the
plaintiff to maintain a pier at that point. This appeal
presents for review the record of the second trial of the
action. At the close of the case upon the first trial the
complaint was dismissed. From the judgment entered
an appeal was taken by plaintiff to the Appellate Division.
The judgment was affirmed. Upon appeal to this court,
the judgment was reversed and a new trial granted.
(*American Ice Company v. City of New York,* 193
N. Y. 673.) Upon the trial under review the parties
entered into a stipulation which recited all of the facts
found by the trial justice, which stipulation also provided
that "all compensation for the value of plaintiff's rights
in the premises to which the plaintiff may be entitled shall
be awarded to plaintiff in this action, and that no further

proceedings shall be taken by the defendant, the city of New York, for the condemnation of the plaintiff's said rights under the condemnation proceedings hereinbefore mentioned, and on the payment of such damages which may be awarded in this action, said condemnation proceedings shall be discontinued without costs to either party, and upon the payment of said damages plaintiff shall deed to the city of New York all the rights and property herein which shall be paid for."

A large number of the facts found relating to the title and interest of the city were reviewed by this court in the earlier cases (*Knickerbocker Ice Company* v. *42nd Street & G. St. F. R. R. Co.*, 176 N. Y. 408; *Matter of Mayor, etc., of N. Y.*, 193 N. Y. 503) wherein it was determined that the title of the city of New York in the tideway and the submerged lands of the Hudson river granted under the Dongan and Montgomerie charters and the acts of the legislature (Laws 1807, chapter 115; Laws 1837, chapter 182), and by grants made by the state to the city was not absolute and unqualified, but was and is held subject to the rights of the public to the use of the river as a water highway; that the title of the city of New York in and to the lands within its public streets (including Forty-third street, to which the city acquired title in 1837–1838, and was opened from the East river to the high-water mark of the Hudson river, sixty feet in width), is held in trust for the public use; that the general public has a right of passage over the places where land, highways and navigable waters meet; and when a wharf or bulkhead is built at the end of a land highway and into the adjacent waters, the highway is, by operation of law, extended by the length of the added structure; that it was competent for the legislature in granting additional submerged lands to the city of New York in 1837 to prescribe that such lands should be used for the purposes of an exterior street to which other streets then intersect-

ing the river should be extended. (*Knickerbocker Ice Company* v. *42nd Street & G. St. F. R. R. Co.*, 176 N. Y. 408, 417.)

The following facts, however, are important in the consideration of this appeal: Prior to 1837 a pier had been constructed upon land under water of the Hudson river at the foot of West Forty-third street, and the same was shown upon a map known as the Smith map, made under chapter 182, Laws of 1837, to be about forty feet in width and two hundred eleven feet in length, entirely within the line of Forty-third street as the same was to be extended to Thirteenth avenue. The easterly end of the pier was connected with the bulkhead built along the easterly side of Twelfth avenue, which bulkhead was connected with the shore at high-water mark to the east of Twelfth avenue by another bulkhead or bridge running east from Twelfth avenue and at right angles thereto. At that time all of Forty-third street westerly of high-water mark, Thirteenth street and Twelfth avenue from Thirty-sixth street to Forty-sixth street, and all the space between said avenues and said streets as shown by the Smith map were covered by the waters of the Hudson river.

Prior to July 1, 1850, one Lindsley became the owner in fee simple absolute and seized and possessed as such of the upland adjoining the tideway on the Hudson river between the north side of West Forty-second street and the south side of West Forty-third street in the city of New York. By two separate deeds, dated July 1st, 1850, the city conveyed to Lindsley land under water of the Hudson river bounded on the east by the high-water mark, on the west by the west line of Thirteenth avenue, on the north by the middle of West Forty-third street and on the south by the middle of West Forty-second street; annexed to each deed was a map showing the tract granted, also Thirteenth avenue, Twelfth avenue, Forty-third and

Forty-second streets as laid down on the Smith map, the line of high-water mark to the east of Twelfth avenue and a bulkhead along the easterly side of Twelfth avenue with a bulkhead or bridge running easterly from the east side of Twelfth avenue within the lines of Forty-third street to high-water mark.   From the premises described there were excepted parts or portions of Twelfth avenue, Thirteenth avenue, Forty-second and Forty-third streets for the uses and purposes of public streets, avenues and highways.

November 18, 1851, the board of aldermen of the city of New York adopted a resolution as follows: "*Resoved*, That the pier foot of Forty-third street be sold to Caleb F. Lindsley, that the Commissioners of the Sinking Fund fix the price to be paid therefor.   The counsel of the corporation to prepare the necessary deed and the proceeds thereof to be deposited in the City treasury to the credit of the Sinking Fund for the redemption of the city debt."

That resolution was also adopted by the board of assistants, April 6, 1852, and approved by the mayor, April 19th, 1852.

November 11, 1852, a resolution was passed by the commissioners of the sinking fund directing that the pier at the foot of Forty-third street with the extent of the present width of said street be sold to Caleb F. Lindsley for the sum of eight thousand dollars.   Thereafter and on the same day a deed was executed by the mayor, aldermen and commonalty of the city of New York and delivered to Lindsley conveying the pier by metes, bounds and measurements together with the extent of the present width of the street with the right of wharfage thereon, etc.   The deed contained a clause as follows, "subject to the right of the parties of the first part to order said pier extended into the river at the expense of the said party of the second part whenever and in what-

ever way they may see fit, reserving to the party of the first part the right to extend said pier at the expense of the city of New York, or to grant the right to do so to other parties, if the said party of the second part fail or neglect to extend said pier when ordered so to do; in which case the right of wharfage, etc., at the portion of the pier extended shall belong to the parties at whose expense the extension shall be made."

The pier conveyed to Lindsley was in actual use as an existing pier continuously down to the year 1898. From 1867 down to the year 1898 the pier and appurtenances were owned, occupied and used by the Knickerbocker Ice Company, plaintiff's predecessor in title, under mesne conveyances from Lindsley, and at all times the land under water in front of the pier and adjacent thereto on the north and south sides thereof was used by boats and vessels for the purpose of being moored, loaded and unloaded thereat.

The department of docks on September 25, 1873, adopted a preamble and resolution, which recited that "a petition numerously signed was presented to the Board February 20th, 1873, requesting that owners of the Pier foot of 43rd Street be ordered to place said Pier in good and sufficient repair and to enlarge the same, it being in a dilapidated condition and wholly unfit to accommodate the business seeking facilities at that point and

"WHEREAS according to the covenants contained in the deed from the Mayor, Aldermen and Commonalty of the City of New York to Caleb F. Lindsley, dated November 11th, 1852, the owners of said Pier are required to extend the same whenever so ordered to do so by the City Authorities, be it therefore,

"*Resolved,* That notice be given to the 'Knickerbocker Ice Company' owners of the Pier foot of 43rd Street, North River, to place the same in safe and proper repair,

and to extend said Pier at the outer end: Westward by
a distance of about Three Hundred (300) feet, and of the
same width as the present Pier.   The work to be done
under the supervision of the Supt. of Repairs and Sup-
plies of this Dep't.

"*Resolved,* That the sum of Fifty ($50.00) Dollars be
charged to and collected from said 'Knickerbocker Ice
Company' annually in advance, as rent for the land under
water belonging to the City, *lying outside of the outer
end of the present Pier,* and to be covered by the extension
above authorized."

The commissioners of the sinking fund, November 14,
1873, granted an application of the department of docks
to change the water front plan as theretofore adopted at
and near Forty-third street and North river and referred
to the pier proposed to be built at the foot of Forty-third
street.   The commissioners resolved that the proposed
pier at the foot of Forty-third street be sixty feet wide,
the width of the street, instead of forty feet, as at present
laid down.   The resolution granting the permission con-
tained the following:

"Provided, however, that when any portion of the land
under water belonging to the City covered by the exten-
sions to the pier shall be required by the City for the per-
manent improvement of the water front, no claim shall
be made by said company or its successors for damages
or otherwise for any structure or improvement that may
be upon the land owned by the City, and provided, fur-
ther, that nothing herein contained shall be considered or
construed as a waiver of the title of the City in and to the
land lying outside of the dimensions of the present pier
owned by the Knickerbocker Ice Company, as laid down
in the deed from the Mayor, Aldermen and Commonalty
of the City of New York to Caleb F. Lindsley, dated
November 11, 1852; and provided, further, that the said
Knickerbocker Ice Company shall first agree in writing to

pay to the City the sum of fifty dollars per annum as rent for the use of the land covered by said extension of twenty feet to the width of the pier. The provisions of this resolution to be accepted or rejected in writing by the said Knickerbocker Ice Company within ten days from the date hereof."

The terms of that resolution were accepted in writing by the Knickerbocker Ice Company. A further resolution was adopted by the department of docks granting permission to the Knickerbocker Ice Company to build the pier specified in the resolution of September 25, 1873, of a width of sixty feet.

In 1873, pursuant to the said resolutions of the department of docks, the Knickerbocker Ice Company extended said pier for a distance of three hundred feet westward from the outer end of the original pier for a width of sixty feet and used the same until 1898, when it was abandoned by the said company. From 1873 to February 1, 1898, the Knickerbocker Ice Company paid one hundred dollars rent annually to the city of New York pursuant to the terms of the resolutions above referred to.

About 1898 the pier was abandoned, entrance to the same was fenced off so as to prevent injury to life and limb, and such portions of the structure that remained in the year 1899 were removed and at the time of the commencement of this action, April 15, 1905, the pier had entirely disappeared from view.

In 1899 the dock department commenced to make improvement to the water front at the foot of West Forty-third street. The place was dredged, stone filling was commenced, piles were driven and the work continued until October, 1905, when the bulkhead line was finished. Other improvements were made to the north between Forty-third and Forty-fourth streets. On the south, about twenty feet south of the southerly line of West Forty-third street, a pier was erected about

eighty feet wide and seven hundred feet long. The existence of that pier would interfere with the south side of any pier that may be erected at the foot of Forty-third street on the new bulkhead line for the reason that the slip about twenty feet between the piers would not be wide enough for ordinary commercial uses and any substantial use of the south side of a pier erected at the foot of Forty-third street would be impossible while the said pier to the south continues on its present site, and by reason of the construction of that pier by the defendants and the acts of the defendants above set forth the plaintiff's rights to maintain the pier at West Forty-third street were taken away and destroyed in the month of October, 1905.

In April, 1892, negotiations were had between the parties to this action for the purchase of the pier rights of the ice company, but were not consummated. In 1894 the city commenced proceedings to condemn the lands under water to the south of the pier in preparation for the work of improving the water front at that point and bulkhead wall along the line established in 1871. In 1898 negotiations again were entered into between the parties for the purchase of the pier rights claimed by the plaintiff but again failed of consummation. In 1900 the city brought a proceeding to condemn the pier rights in question but the same has not been completed.

The trial justice at the beginning of the trial, after having heard counsel and considered their views upon briefs filed, ruled that the plaintiff's rights were restricted to a pier of the dimensions of the original pier. The court said: "The court now states that neither counsel need give more attention to a pier extended three hundred feet, because in conformity with the court's previous opinion the court will hold that the plaintiff's rights are restricted to a two hundred and twelve foot pier, and the plaintiff is to have an exception so that that question can go up on appeal."

The trial justice thereupon found as conclusions of law that the plaintiff was entitled to construct and maintain a pier at the foot of West Forty-third street, beginning at the existing bulkhead line laid out by the department of docks and commissioners of the sinking fund in 1871, extending westerly into the waters of the Hudson river two hundred eleven feet and three inches and in width forty feet, also to the use of the remaining nineteen feet seven inches of the width of Forty-third street, at said bulkhead line and to collect and receive the wharfage, emoluments and revenues accruing or to accrue therefrom; that by reason of the acts of the defendants as set forth in the stipulation of facts, which are embodied in the findings, the plaintiff as the owner of the rights described in the foregoing conclusion has sustained damages in the sum of twenty-four thousand six hundred and nineteen dollars, being the value of such rights acquired, described, taken and destroyed by the defendant in October, 1905, and upon payment of such damages the condemnation proceedings shall be discontinued without costs to either party and the plaintiff shall deed to the city of New York all its rights and property herein which shall be paid for. The refusal of the trial justice to receive evidence of the value of the pier rights beyond the original pier was excepted to by plaintiff and raises the question of law to be determined upon this appeal.

Counsel for respondents argues that the only authority vested in the mayor and clerk and the common council by the resolution of the commissioners of the sinking fund of November 11, 1852, was to execute a deed to Lindsley conveying to him the pier at the foot of West Forty-third street with the extent of the pier's width of said street; that the mayor was not authorized to execute a deed which contained the provision requiring the grantee upon notice to extend the pier conveyed to him, and said conveyance in so far as it assumed to convey such right is void. The

argument of c, unsel is based upon the powers of the commissioners of the sinking fund under the ordinance of the common council adopted February 22, 1844, which regulated the powers of the commissioners of the sinking fund, and which ordinance was confirmed by chapter 225, Laws of 1845.

The ordinance in question does not appear in full in the findings or as an exhibit in the record, and the trial justice found: "The grant to Lindsley, November 11th, 1852, was not made after a compliance with the provision of the sinking fund ordinance of February 22d, 1844, nor did the alleged grant contain the usual covenants specified in said ordinance." In the absence of the ordinance recourse must be had to findings, which disclose the substance of the ordinance of 1844, referred to, so far as covenants are concerned:

The eleventh finding of fact signed by the trial justice is as follows: "On February 22, 1844, an ordinance was passed by the Common Council of the City of New York regulating the powers of the Commissioners of the Sinking Fund, which, among other things, provided that all grants made by virtue of said ordinance should contain the usual covenants, including those in relation to streets or avenues passing through them, and also in relation to bulkheads and wharfage."

In finding number fifteen, which had reference to two deeds made to Lindsley in 1850, of the land under water between Forty-second and Forty-third streets, the trial justice found the making and recording of said deeds, and, in finding number seventeen, found that the said deeds contained the usual covenants referred to in the sinking fund ordinance, and he then proceeds to state the substance of the "usual covenants" referred to in the ordinance as follows: "that the grantee should within three months after being required by the city, at his own expense, construct good and sufficient bulkheads, wharves,

streets or avenues, * * * should regulate and pave the same, and uphold and keep the same in good order and repair; that the said streets and avenues should forever continue and remain public streets, avenues and highways; * * * that the grantee was to build said wharves, bulkheads, streets and avenues when thereunto required by the Mayor, Aldermen and Commonalty of the City of New York, or their successors; and, lastly, that the grantee upon fulfilling all of said covenants was to receive the wharfage, cranage, and all other advantages or emoluments accruing by or from the exterior line * * *."

That "The covenants above referred to are the usual covenants referred to in the Sinking Fund ordinance of 1844."

The commissioners of the sinking fund were authorized by the ordinance to sell or dispose of any real estate in the city not in use or reserved for public purposes upon such terms as the commissioners of the sinking fund might deem most advantageous to the public interest, after appraisal of the same and public notice thereof of the time and place of the sale, and every grant made under or by authority of the commissioners of the sinking fund was required to contain the usual covenants, etc. The deed executed by the city to Lindsley did not contain the covenants that the grantee should construct streets or avenues, regulate and pave the same, keep the same in good order and repair, and that the streets and avenues should forever continue and remain public streets for the free and common use and passage of the inhabitants, etc.

The omission of the covenants named from the deed did not render the grant void. The plaintiff does not seek to recover damages by reason of a failure of streets, but confines its claim to damages for loss of the right to maintain the pier and collect wharfage at Forty-third street.

The trial justice found as matter of fact in relation to the deeds executed to Lindsley in 1850, that performance of the covenants to build and construct Thirteenth avenue and fill in and extend Forty-third and Forty-second streets out to Thirteenth avenue was not required by the city, and the plans for the improvement of the water front adopted in 1871 forbade and prevented any such filling in or construction in the future and prevented any solid filling in the water front of the Hudson river from Thirty-sixth to Forty-sixth street west of a line two hundred and fifty feet west of the east side of Twelfth avenue as said avenue was shown on the Smith map.

The provision of the ordinance of 1844, "that the grantee was to build said wharves and bulkheads when thereunto required by the Mayor, Aldermen and Commonalty of the City of New York, and that the grantee upon fulfilling all of said covenants was to receive wharfage and cranage and all other advantages and emoluments accruing by or from the exterior line," was in substance embodied in the deed of the pier to Lindsley. That instrument granted to Lindsley the pier and embraced thereunder was a right to wharfage thereon and all revenue derived therefrom. It also provided that the grantee at his own expense, when ordered so to do by the city, should extend the pier. Failure on the part of the grantee to comply with such order would result in the forfeiture of the right to wharfage on the pier extended by the city or by any person to whom it granted the right to extend the same after the failure by the grantee to do so. In *Knickerbocker Ice Company* v. *42nd Street & G. St. F. R. R. Company* (176 N. Y. 408, 418, 419) we held that the deed from the city to Lindsley in 1852 did not convey to him an absolute fee title, but that the real purpose and effect of the grant was to convey to Lindsley the right to maintain a pier and to collect wharfage at the foot of Forty-third street; that the deed of 1852 conveyed the

incorporeal hereditament attached to the fee and not the fee itself; that the ice company, plaintiff in that action, as the grantee and successor in title, had the right to follow the extension of Forty-third street for the purpose of maintaining a pier and collecting its revenues, and that the right to maintain the pier and collect wharfage at the foot of Forty-third street should extend to such point as should be located by lawful authority.

When this case was before this court upon the first appeal (*American Ice Company* v. *City of New York*, 193 N. Y. 673) we held that the plaintiff was not entitled to damages for the destruction of its old pier, nor by reason of the construction of the bulkhead provided for in the plans of the dock department, but to a proper compensation for the taking of his right to maintain a pier.    The appeal in that case was argued in connection with *Matter of Mayor, etc., of N. Y.* (193 N. Y. 503, 513, 514, 518), where the conveyance made by the city to Lindsley was again under consideration.    Judge WERNER, writing for this court, said: ''The question in the case which underlies all others is whether the American Ice Company has a valid and existing right to maintain a pier in the North river at the foot of Forty-third street. In the case of *Knickerbocker Ice Company* v. *42nd Street & G. St. F. R. R. Co.* (176 N. Y. 408) we held that the plaintiff there was the grantee of a 'right to maintain a pier, and to collect wharfage, etc., at the foot of Forty-third street in the Hudson river, where that point should be located by lawful authority.'    The American Ice Company has succeeded to all the rights of the Knickerbocker Ice Company in the premises.''    After discussing the questions that have been raised with reference to the validity of the title, Judge WERNER said: ''We close this branch of the discussion by reiterating what we said in *Knickerbocker Ice Co.* v. *42nd Street & G. St. F. R. R. Co.* (*supra*), that the ice company was the grantee of 'the

right to maintain a pier and to collect wharfage, etc., at the foot of Forty-third street in the Hudson river, wherever that point should be located by lawful authority,' and we now add that the grant was a valid one."

We reiterate that the deed from the city to Lindsley conveyed to Lindsley the right to maintain a pier and to collect wharfage at the foot of Forty-third street wherever that point should be located by lawful authority, and that the plaintiff as successor in title to Lindsley had the right to follow the lawful extension of said pier on Forty-third street for the purpose of maintaining the pier and collecting the revenues therefrom.

Counsel further argues that the department of docks was powerless to authorize plaintiff's predecessor in title to extend the pier into the river, and in support of that contention calls attention to the organic law establishing the dock department, chapter 574 of the Laws of 1871. Section 6 of that act amended section 99 of the act of 1870 and created a department of docks which was to have exclusive charge and control of all wharf property belonging to the city, or to which the city is or may become entitled or may acquire under the provisions of said statute, and said department was to have exclusive charge or control of the labor, building, rebuilding, maintaining, altering, strengthening, leasing and protecting said property and every part thereof. The statute then provided; "Said department is also hereby invested with the exclusive government and regulation of all wharves, piers, bulkheads and structures thereon, and waters adjacent thereto, and all the basins, slips and docks, with the lands under water in said city not owned by said corporation."

The statute of 1871 does not refer to grants theretofore made. The grant to Lindsley of the right of wharfage was a property right, the possession of which could only by resumed by the city by due process of law upon proper compensation being made. (*Langdon* v. *Mayor, etc., of*

27

*N. Y.*, 93 N. Y. 129; *Knickerbocker Ice Company* v. *42nd St. & G. St. F. R. R. Co.*, 176 N. Y. 408.)

Under the law of 1871, the powers theretofore performed and exercised by other officers, departments or bureaus of the city relating to property covered by the act of 1871 were to be thereafter exercised by the dock department, which board was clothed with governmental control and regulation of all wharves and piers which were not owned by the city, to the building, rebuilding, repairing, maintaining, altering and strengthening of said property. The resolution of the dock department of September, 1873, requiring that the pier in question be put in good and sufficient repair and extended into the North river 300 feet was an exercise of the governmental power and authority of regulation conferred upon the board by the law of 1871. The commissioners of the sinking fund in November, 1873, granted the application of the dock department to change the plan adopted by that board under the act of 1871, and adopted a resolution that it was deemed advisable that an alteration be made in the width of piers, amongst which was mentioned the pier proposed to be built at the foot of Forty-third street, and then provided that the proposed pier at the foot of Forty-third street be sixty feet wide instead of forty as at present.

That resolution recognized not only that a plan with reference to the improvement of the water front had been adopted under the law of 1871 but that such plan showed the pier *proposed* to be built at the foot of Forty-third street, provided that the proposed pier be sixty feet in width, and that tracings of the pier referred to be transmitted to the commissioners of the sinking fund. One week later the dock department in its proceedings referred to the resolution of the sinking fund commissioners making the legal width of the pier sixty feet instead of forty feet, as laid down in the plans adopted

by the department and by resolution granted permission as heretofore stated to the Knickerbocker Ice Company in making the repairs and extensions to said pier as ordered by resolution of September 25, 1873, to build said pier a width of sixty feet, the width of the street. The resolution provided that when any portion of the land under water belonging to the city covered by the extensions to the pier shall be required for the permanent improvement of the water front, no claim shall be made by said company or its successors for damages or otherwise for any structure or improvement that may be upon the land owned by the city, or construed as a waiver of the title of the city in and to the land lying outside of the dimensions of the present pier. Two departments of the city government, one charged with the governmental power of regulating piers, and the other with the expenditure of the moneys of the city for that purpose, recognized the existing plan under the law of 1871, and acquiesced in a modification of the same so far as the width and extension of the pier in question was concerned. The resolutions mentioned indicate that the proposed extension which had been ordered in September appeared upon the plans presented to the commissioners of the sinking fund at that time. As heretofore pointed out the pier was extended three hundred feet at the expense of the ice company, and for twenty-five years thereafter the city of New York collected the annual rental reserved in the resolution ordering the pier extended, and so far as possible all departments of the city government ratified and confirmed all acts that had theretofore been performed. I do not agree with the contention of the counsel for respondents that the department of docks under the statute of 1871 was powerless to order and require the extension of the pier to be made.

Counsel for respondents calls attention to language in the statute of 1871 to the effect that the plan adopted by

the commissioners of the sinking fund was to be the *sole* plan according to which any wharf or pier should thereafter be laid out or constructed. I have already pointed out that the plan was modified by the resolutions of the department of docks and the sinking fund commissioners, which departments were authorized to change the width or location of piers laid down on the plan.

The provision of the resolution of the dock department that no claim should be made for any structures or improvements made upon the land owned by the city has no application to the question under consideration; the plaintiff does not seek to recover damages for structures or improvements, but merely for the act of the city in denying to it the right to maintain the pier at the foot of Forty-third street as extended by the order to which reference has been made.

As was said by Judge WERNER in *Matter of Mayor, etc., of N. Y.* (193 N. Y. 519), where the rights of plaintiff's predecessor were considered: "Nor have the pier owners any right to compensation for damages to the structure, because that might at any time have been rendered worthless as a pier by the filling in of the land as far westerly as Thirteenth avenue. But it does not follow that the ice company has no property rights in the premises whatever. Its alleged right to an easement over the lands sought to be condemned in this proceeding, and its actual right to maintain a pier at the foot of Forty-third street, are two separate things. Conceding, for the purposes of this discussion, that the ice company has now no pier at the foot of Forty-third street, it still retains the right to maintain a pier at that point, and that right cannot be destroyed without compensation. The city is now building, or proposes to build, a new pier extending seven hundred feet westerly into the Hudson river on a line but twenty feet south of the southerly line of Forty-third street extended. This new pier, when erected, will practically destroy the franchise of the ice company

to build and maintain a pier at the foot of Forty-third street. While the city clearly has the power to acquire this right of franchise owned by the ice company, the latter is quite as clearly entitled to compensation for being deprived of that right."

I am of opinion that the rights of the plaintiff are to be measured by the original pier as enlarged by the extension and not otherwise, and that the trial justice was in error in holding that damages to plaintiff were to be measured by the original pier. The judgment should be reversed and a new trial granted, with costs to abide the event.

SEABURY, J. (dissenting). I dissent. The decision about to be made holds in effect that the plaintiff has a perpetual franchise to maintain a pier as extended at the foot of Forty-third street, city of New York, and that if the city of New York is to be permitted to complete the permanent improvement of its water front it must compensate the plaintiff upon the theory that it owns such a perpetual franchise. In so far as the plaintiff derived the right to maintain a pier from the city through the grant to Lindsley, it has been fully compensated by the award of $24,619, which has been made to it. The claim of plaintiff to a right in the extended pier must, necessarily, rest upon the resolution of the department of docks, passed September 25, 1873, and the resolution of the commissioners of the sinking fund, passed November 14, 1873. Unless these resolutions confer the right which the plaintiff asserts, its claim is without foundation. Assuming (although I think the assumption is at least doubtful) that the department of docks had power to make such a grant as the plaintiff now claims was made, it is apparent from the language of the resolution that no claim of a perpetual franchise can be predicated upon the resolution of the department of docks. This resolution merely authorized the predecessor of the plaintiff to extend the pier westward by a distance of about

300 feet, and to the same width as the pier then existing. This resolution granted a mere license upon payment of $50 "annually in advance as rent for the land under water *belonging* to the city lying outside of the outer end of the present pier and to be covered by the extension authorized." I do not think it can be claimed with any degree of plausibility that this resolution conferred a perpetual franchise to maintain the extension of the pier. The resolution was not a grant at all, but only a revocable license upon a nominal annual rental. Moreover the right to extend the pier was expressly stated in the resolution to be subject to the following condition, namely: "Provided, however, that when any portion of the land under water belonging to the city, *covered by the extension to the pier* shall be required by the city for a permanent improvement to the water front, no claim shall be made by said company or its successors for damages or otherwise for any structure or improvement that may be upon the land owned by the city." This resolution further provided that nothing therein contained "*shall be considered or construed as a waiver of the title of the city*," etc. In the face of the explicit condition that the plaintiff should be permitted to maintain the extension only until the land covered by it "shall be required by the city for a permanent improvement of the water front," there seems to me to be no room for the contention that the plaintiff has acquired a perpetual franchise to maintain the pier as extended. The resolution of the commissioners of the sinking fund referred to merely authorized the department of docks to change the water front plan, and directed that the proposed pier at the foot of Forty-third street should be 60 feet wide. The mere statement of the terms of these resolutions makes it clear that the city reserved its right and title to the land that was covered by the extension of the pier, and that it granted to the plaintiff's predecessor no right in the land, and expressly annexed to the license that it did grant the

condition that the license should be enjoyed only until any portion of the land covered by the extension of the pier shall be required by the city for a permanent improvement of its water front. From 1873 to 1898 the predecessor of the plaintiff paid $100 a year rent for the privilege of maintaining the pier and the extension thereto. In 1898 the pier was abandoned. From that time to the present the pier has been discontinued and no rent at all has been paid to the city. The city has now determined, under its rights specifically reserved in the resolution of the department of docks, under which this plaintiff claims, to permanently improve the water front and to build a pier. The plaintiff, notwithstanding the fact that it has been awarded full value for the taking of its original pier rights derived under the Lindsley grant, and although it has abandoned the pier since 1898, and paid no rent from that time, now asserts a perpetual franchise to the pier as extended. The decision about to be made gives sanction to this claim. The result of the decision will be that the city of New York must pay to the plaintiff, in addition to the sum already awarded, the value of a perpetual franchise to maintain the extension to the pier. In my judgment the claim of the plaintiff is unjust to the city of New York and without any warrant in law to sustain it.

I, therefore, vote in favor of affirming the judgment appealed from.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, COLLIN and CARDOZO, JJ., concur with HOGAN, J.; SEABURY, J., reads dissenting opinion.

Judgment reversed, etc.