In the Matter of the Application of the CITY OF NEW YORK, Respondent, Relative to Acquiring Title to Lands Required for the Opening of Main Street in the Borough of The Bronx.

ARABELLA D. HUNTINGTON, Appellant.

Condemnation proceedings — lands under water subject to public easement of passage from high-water line to navigable waters — when such easement does not preclude right of owner to substantial damages when lands under water are taken by municipality in condemnation proceedings.

1. Where a perpetual right of way exists in favor of the public between the terminus of a street at the high-water line of navigable tidal waters and those waters, the public has a right of passage over the place where the land, highway and the navigable waters meet. Such an easement is not extended by a structure placed upon the land under the waters and not substantially interrupting the passage between the street and the water. The public has, however, the easement of passage merely and cannot, in appropriating it or exercising it, destroy or seize without compensation other or additional property rights.

2. Appellant is the owner, by mesne conveyances from a royal grant, of lands under the navigable waters of Long Island Sound, extending four hundred feet from high-water mark at the foot of a public street upon City Island in the city of New York, subject, by reservation contained in the grant, to the right of the public and the upland owners to use the premises for the purposes of fishing,

navigation, anchorage and access to and from the shore until wharfs and buildings should be erected thereon and to use for such purposes all parts of the premises at any time not occupied by such structures. The city seeks to acquire the title in fee simple to such lands under water in condemnation proceedings and nominal damages, merely, have been awarded upon the ground that the ownership of such lands under water is and always has been subject, as matter of law, to the right of the public to travel over them for the purpose of passing to and fro between a public street and the navigable waters, and, hence, that the acquisition of the titles to the lands under water is not an injury to the appellant. *Held,* error; that the public right of traveling over the lands in question did not exhaust or annihilate the uses of which they were capable or the property rights inherent in the ownership of them; that such rights are private property protected by the relevant constitutional provisions; that the appellant is entitled to substantial damages, and that the order affirming the present award should be reversed and the proceedings remitted to the commissioners to award the appellant damages in accordance with this opinion.

*Matter of City of New York (Main St.),* 163 App. Div. 401, reversed.

(Argued May 27, 1915; decided October 12, 1915.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 10, 1914, which affirmed an order of Special Term confirming the report of commissioners of estimate and appraisal in a proceeding to acquire land for street purposes.

The facts, so far as material, are stated in the opinion.

*Herbert Parsons, Albert Southard Wright* and *Tompkins McIlvaine* for appellant. Prior to this proceeding appellant had valuable property rights in parcels 222 and 222A. (*Fanning* v. *Osborne,* 102 N. Y. 441; *Mott* v. *Mayor, etc.,* 2 Hill, 263; *Paige* v. *City of Schenectady,* 178 N. Y. 111; *Buffalo* v. *Lackawanna,* 190 N. Y. 84; *Verplanck* v. *Mayor, etc.,* 2 Edw. Ch. 220; *Steers* v. *City of Brooklyn,* 101 N. Y. 51; *Town of Brookhaven* v. *Smith,* 188 N. Y. 74; *De Lancey* v. *Piepgras,* 138 N. Y.

26; *Bedlow* v. *N. Y. F. D. D. Co.*, 112 N. Y. 285.) The Palmer grant contains no provision which expressly or by implication would have prevented appellant prior to this proceeding from collecting wharfage for the use of any dock at the foot of Main street. It conveyed the fee to the lands under water at Belden point, subject only to such public rights as were therein expressly reserved. (*De Lancey* v. *Piepgras*, 138 N. Y. 26; *Huntington* v. *Havens*, 5 Johns. Ch. 22; *Augustus* v. *Graves*, 9 Barb. 595; *Tate* v. *Clement*, 176 Penn. St. 550; *Haight* v. *Keokuk*, 4 Iowa, 199; *Corbin* v. *Healy*, 20 Pick. 514; *Sumner* v. *Williams*, 8 Mass. 162; *Barnett* v. *Barnett*, 104 Cal. 298; *Doherty* v. *Matsell*, 119 N. Y. 646; *District* v. *Robinson*, 180 U. S. 92.) The right of wharfage of which appellant has been divested by this proceeding is such a valuable property right as entitles her under the Constitution to full and just compensation. (*City of Syracuse* v. *Stacy*, 45 App. Div. 249; *Langdon* v. *Mayor, etc.*, 59 Hun, 434; *Boom Company* v. *Patterson*, 98 U. S. 403; *Sauer* v. *City of New York*, 180 N. Y. 27; *Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Williams* v. *Mayor, etc.*, 105 N. Y. 419; *Matter of City of New York (Speedway Case)*, 168 N. Y. 134; *Steers* v. *City of Brooklyn*, 101 N. Y. 51; *Sage* v. *Mayor, etc.*, 154 N. Y. 61; *Lewis* v. *Briggs*, 198 N. Y. 287.) The city of New York never prior to this proceeding had the right to build a dock or any other structure below high-water mark at the foot of Main street. The pier which it did build in 1900 constituted a wrongful trespass. (*Johnson* v. *Barret*, Aleyn, 10; *Bullstrode* v. *Hall*, 1 Siderfin, 148; *Kirby* v. *Gibbs*, 2 Keble, 294; *Whitaker* v. *Wise*, 2 Keble, 759; *Attorney-General* v. *Farmen*, 2 Lev. 171; *Blundell* v. *Catterall*, 5 B. & Ald. 268; *Attorney-General* v. *Parmeter*, 10 Price, 378; *Attorney-General* v. *Terry*, L. R. [9 Ch.] 425; *Attorney-General* v. *Richards*, 2 Anstr. 603; *Town of Brookhaven* v. *Smith*, 188 N. Y. 74; *Sauer* v. *City of New York*, 206 U. S. 536.)

*Frank L. Polk, Corporation Counsel* (*Joel J. Squier* and *James Regan Fitz Gerald* of counsel), for respondent. The royal grant of 1763 to Palmer contemplated and intended that the streets shown on the map made by Colden, surveyor-general, should extend to the navigable waters of the sound, or at least to the extremity of the grant. (*De Lancey* v. *Piepgras*, 138 N. Y. 26; *People* v. *Lambier*, 5 Denio, 9; *City of Buffalo* v. *D., L. & W. R. R. Co.*, 190 N. Y. 84; *Matter of City of Brooklyn*, 73 N. Y. 179; *Steers* v. *City of Brooklyn*, 101 N. Y. 51; *Knickerbocker Ice Co.* v. *F. S. S. R. R. Co.*, 85 App. Div. 530; 176 N. Y. 408.) Neither appellant nor her grantor acquired any rights in the dock at the foot of Main street. (*Matter of N. Y. C. & H. R. R. R. Co.*, 77 N. Y. 248; *Taylor* v. *A. M. Ins. Co.*, 37 N. Y. 275; Gould on Waters [3d ed.], 201; *Backus* v. *Detroit*, 49 Mich. 110; *McMurray* v. *Baltimore*, 54 Md. 103; *Barney* v. *Keokuk*, 94 U. S. 324; *Haight* v. *Keokuk*, 4 Iowa, 199; Dillon on Mun. Corp. [5th ed.] §§ 264, 271; *People ex rel. Burnham* v. *Jones*, 112 N. Y. 597; *Mayor* v. *Hart*, 95 N. Y. 443; *People* v. *Canal Commissioners*, 33 N. Y. 461; *Lewis B. P. O. Co.* v. *Briggs*, 198 N. Y. 287.)

COLLIN, J. The present proceeding was instituted, under statutory authority, for the purpose of acquiring, in eminent domain, the title in fee simple to lands of (among others) Arabella D. Huntington, the appellant here, to be used in widening and extending a public street, styled Main street (City Island) of the city of New York. The decisions thus far made in it, while awarding the appellant substantial damages for certain parcels of her lands, have awarded nominal damages merely, and not substantial damages, for two parcels acquired, upon the ground that the ownership of the plaintiff is and always has been subject, as matter of law, to the right of the public to travel over them for the purposes of passing to and fro between Main street and the navigable waters

of Long Island Sound, and the acquisition of the titles to them for the street purposes was not an injury to the appellant. Her alleged grievance is based upon such conclusion.

For time out of mind Main street had existed as a public highway from the bridge connecting the northern shore of City Island with the mainland to the southern extremity of the island. The city of New York through this proceeding has extended it southerly through the lands of appellant for a considerable distance under the waters of Long Island Sound. One of the two parcels, to which this appeal relates, constitutes the southerly end of the street as it was at the commencement of this proceeding and extends southerly from an old sea wall through the distance of about thirty-five feet to the high-water line of the north shore of Long Island Sound. The second parcel extends southerly from the first or from the high-water line, in the width of the street as it formerly existed, through a considerable distance under the waters of the sound. As already stated, the city of New York has taken unto itself the title in fee to those lands without payment to the appellant of substantial compensation.

We will first consider the reasons stated by the respondent as justifying the determination of which the appellant complains.

The respondent, deeming it established that the southern terminus of the former Main street was at the high-water line, asserts that the claim of the appellant to substantial compensation must rest solely upon the taking of the land under water and yet cannot there rest because her ownership was subject to the right held by the people of constructing a highway or street upon or over it; that such right of the people is based upon the alleged fact that the title of the plaintiff in its origination through a royal grant in 1763 was expressly subjected to such right.

The royal grant of 1763 conveyed to Benjamin Palmer, his heirs and assigns, in consideration of a sum to be

annually paid, the lands "under the Water round the East Side, South end and Part of the West side" of City (then Miniford's) Island, and being in every part of the breadth from the common high-water mark, four hundred feet into the sound, "together with all and singular the Benefits, Liberties, Privileges, Ways, Waters, Water Courses, Easements, Wharfs, Keys, Profits, Hereditaments, and appurtenances to the same or any part thereof, belonging or in any wise appertaining or that can in any Wise thereon or therewith be had made or used or enjoyed. And also All our Estate, Right, Title, Interest, Benefit, Claim and Demand whatsoever of in and to the same and every Part and parcel thereof And the Reversion and Reversions Remainder and Remainders, Rents, Issues and Profits of the same and of every Part and Parcel thereof. To have and to hold all and singular the said Tract and Space of Ground Soil and Premises above granted, ratified and Confirmed or meant, mentioned or intended so to be and every part and parcel thereof with the appurtenances unto him the said Benjamin Palmer his heirs and assigns to the sole and only proper use, benefit and behoof of him the said Benjamin Palmer, his heirs and assigns forever;   *   *   *   . provided, always, and upon this condition, nevertheless, that if the said Benjamin Palmer, his heirs or assigns or any of them or any other person or persons by his, their or any of their privity, consent or procurement shall at any time or times hereafter, make, erect or build, any wharfs, docks, or any other building or thing whatsoever, on the premises hereby granted or on any part thereof, so as in any manner to obstruct, hurt or prejudice the navigation of the said Sound or East River, or to make the same at any time or times less commodious or safe for any ships or vessels whatsoever to pass or repass or be navigated in the said East River or Sound, that then and in such case this, our present grant shall cease and be absolutely null and void, and the premises hereby granted shall again be

vested in us, our heirs and successors as fully and abso-
lutely as if this, our grant, had not been made provided
also further and we do hereby declare our Royal Will and
Pleasure is, that nothing in these presents contained shall
extend or be construed to extend to any Time or Times
hereafter to prohibit or in any wise deprive prejudice
exclude or hinder any Person or Persons whatsoever from
any Right, Liberty or Privilege which he or they might
lawfully enjoy before the Granting these our Letters
Patent in Bringing to and anchoring any Ship Boat or
Vessel on the Premises hereby granted or Fishing on the
same Nor from any other Right, Liberty or Privilege
which he or they might legally have enjoyed as
aforesaid Except only on such Part and Parts of the
premises hereby granted as shall at such Time or Times
be covered with Wharfs or other Buildings erected
thereon by the said Benjamin Palmer his Heirs or
Assigns or some or one of them hereby reserving to us
our Heirs and Successors and to all other Persons what-
soever, at all Times and Times hereafter All the said
Powers, Liberties, Rights and Privileges in every Part
of the Premises hereby granted not covered with Wharfs
or Buildings as aforesaid as fully as if this, our Grant
had not been made." In the course of the years, a
default in the payment of the sum to be annually paid
as stipulated occurred and the state of New York as the
constitutional successor of the crown in the right to the
quit-rent sold and granted to the purchaser, Elias D.
Hunter, the title conveyed by the royal grant and which
was considered and defined by us in *De Lancey* v. *Piep-
gras* (138 N. Y. 26). We there held that the grant
vested in Palmer the lands it described, subject to for-
feiture for a failure to pay the sum reserved; that the
state validly had enforced the forfeiture and its grantee
thereunder received the property which the crown granted
to Palmer, namely, the fee subject to the reservation to
the public and to the upland owners of the right to use

the premises for the purposes of fishing, navigation, anchorage and access to and from the island until wharfs and buildings had been erected thereon, and to use for such purposes all parts of the premises at any time, not occupied by such structures. Such was the title of the appellant. It is clear that the acquisition by the city of the fee of the lands by which the appellant as owner or proprietor is expelled from the present and future possession and occupation of them and deprived of the right, secured by the terms of the grant as well as by the common law, to use them in any manner or for any purpose consistent with the common or public rights of navigation, anchorage and fishery, is not within the reservation.

The respondent, however, expressly brings under our consideration the recitals of the grant and argues that we should now hold, as a matter of law, from its entire contents that it intended and effected that all streets, of which the Main street was probably one, then laid out in fact or upon the map referred to in the grant should be deemed extended, actually or potentially by it, to the exterior line of the lands granted or at least to the point of navigation. It recites that many persons styling themselves proprietors of Miniford's (City) Island by a petition presented to the royal governor represented (among other things) that they had at a considerable expense procured the island to be surveyed and laid out in the form of a town which they proposed to erect thereon, but in order to render it regular and uniform, and to add to its convenience and accommodation for future inhabitants they had been under a necessity of introducing into the plan in many parts around the island certain lands under water, the obtaining of a grant whereof was highly essential to enable them to effect a settlement thereon in any degree advantageous and they " therefore humbly prayed our Letters Patent unto the said Benjamin Palmer his Heirs and Assigns forever for " the grant as made. The map referred to in the grant portrays the island laid out in blocks

bounded by streets extending to the high-water line, and portrays the exterior line of the lands granted. Indorsed upon it is the certificate of the surveyor, the contents of which are weightless in this discussion. The recitals will undoubtedly suggest to different minds different reasons or intentions in petitioning for the grant to Palmer. We are not free to attempt to prove one more probable or forceful than another. The grant is expressed and executed in language clear and certain. The title and interest it conveyed was to Palmer, his heirs and assigns. It neither created nor expressed any trust relation or obligation upon his or their parts. It by its terms vests in the grantee the legal and beneficial title and enjoyment of the subject of the grant and we may not by interpretation add to or subtract from its effects. It evidences notable skill and intelligence in its preparation, and the rights reserved are set forth explicitly and with certainty. The argument of respondent cannot prevail. A recital cannot control or vary the effect of the plain words of the granting part of the deed.

The respondent further asserts that because Main street terminated at the high-water line of the navigable waters of the sound the lands under water contiguous to the street terminus were, under the common law of the state of New York, subject to the easement essential to a public highway. The authorities cited by the respondent sustain the assertion with sound and convincing reasons. A perpetual right of way exists in favor of the public between the terminus of a street at the high-water line of navigable tidal waters and those waters. The public had a right to pass directly from the street to the sound and from the sound to the street — a right of passage over the place where the land highway and navigable waters meet. Whenever under lawful ownership or authority the waters bounding the end of a street are displaced by earth or other filling, or a wharf or structure is built out from the street into the waters, the easement of

the street is extended by operation of law to the end of the filling or the structure. (*People* v. *Lambier*, 5 Denio, 9; *Knickerbocker Ice Co.* v. *Forty-second St. & G. St. F. R. R. Co.*, 176 N. Y. 408; *Matter of City of Brooklyn*, 73 N. Y. 179; *City of Buffalo* v. *D., L. & W. R. R. Co.*, 190 N. Y. 84.) The public have this easement of passage merely and cannot in appropriating or exercising it destroy or seize without compensation other or additional property rights. In the present case the city of New York in 1900 constructed a wharf or pier from the sea wall, thirty-five feet or thereabouts inland from the high-water line southerly along the street to the high-water line, thence into the sound upon the appellant's lands through the distance of about three hundred and fifty-five feet. The right, authority or conditions under which the construction was effected are not disclosed. In the absence of evidence, we may assume it was with the consent or acquiescence of the appellant or a predecessor in title. Through the distance from its inland end to the line delimiting Main street as extended southerly by this proceeding, it is of the width of the old Main street. Under the principle stated and the authorities cited, the public had the right to travel over it. The appellant seeks to defeat this conclusion by the fact that the appellant and not the people owned the fee to the bed of Main street and the appurtenant riparian rights, one of which was to wharf out to navigable water. The fact is immaterial. The right of the public to pass along the pier or wharf, as the highway connecting the land and the water, is referable to and within the right of navigating the waters of the sound subject to which the riparian rights existed. Under the view we have here taken, it is unnecessary to consider the additional claim of respondent that by virtue of the facts proven the public, through prescriptive right or adverse possession, had the right to use the pier or wharf as a highway.

The public right of traveling over the two parcels did

not exhaust or annihilate the uses of which they were capable or the property rights inherent in the ownership of them. Inasmuch as the two parcels are under the ownership of the appellant, it is unnecessary to fix with accuracy and precision the ownership of either as the source of those rights. Different ownerships of them might give rise to conflicting claims. The appellant owned the right, which was transferable, to devote the land under water to any use which the legislature of the state or the Federal congress did not declare an interference with navigation or fishing or which, in case it destroyed the then existing connection of the street and the water, continued the easement of Main street to the water. The easement of a street terminating at the high-water line of navigable waters is not extended by a structure placed upon the land under the waters and not substantially interrupting passage between the street and the water. As already stated, the title of the appellant to the parcel under water had as its source a conveyance by the crown through a royal governor. By the terms of the conveyance it was in fee simple and vested in the individual, Palmer. It was in no sense public, and therein was it fundamentally unlike that vested in the town of Brookhaven in *Town of Brookhaven* v. *Smith* (188 N. Y. 74). The right of the public in the lands here involved (except the rights of navigation and fishing) arose under the common law of the state which we deem applicable to the present condition, from the meeting of the street and the water, and was that of passing from the land highway to the water highway and from the water highway to the land highway. That right was not inconsistent with that of the appellant to use them for other purposes. (*Steers* v. *City of Brooklyn*, 101 N. Y. 51.) The title of the appellant vested in her the right, subject to state and Federal interference as stated, to use the parcel of land under the waters for any and all purposes which did not bar the people from reaching the waters of the sound from the terminus of Main

street or the street from the waters of the sound, and the further right to so use them free from such restriction whenever, if ever, the street should be abandoned or discontinued. The right was private property protected by the relevant constitutional provisions.

The wharf or pier constructed by the city of New York was affixed to the lands under water by piles. In the absence of proof, it, presumptively, was the property of appellant, removable and salable by her. The people acquired through its construction under the mere acquiescence of the owner of the lands beneath neither the ownership of it nor the right to its continued existence. It was not a natural accretion, but an artificial structure not intended by the owner and not accepted by the people as a street. The appellant or her predecessor in title at any time could by its removal have restored the former meeting of the street and the water. The city has deprived the appellant of and must justly compensate her for it.

The reconsideration which must be had in the proceeding may bring into the record proof of additional facts.

The ruling of the commissioners of estimate and appraisal that the parcels were dedicated to public use because incumbered by the easement in favor of the public was erroneous.

The order of the Appellate Division should be reversed and the proceeding remitted to the commissioners to award the appellant damages in accordance with the foregoing views, with the costs of the appeal in the Appellate Division and the appeal in this court.

WILLARD BARTLETT, Ch. J., HISCOCK, CUDDEBACK, HOGAN, CARDOZO and SEABURY, JJ., concur.

Order reversed, etc.