■ CITY OF NEW YORK, Respondent, v IVIO MAZZELLA et al., Appellants. [858 NYS2d 114]—

Order, Supreme Court, Bronx County (Douglas E. McKeon, J.), entered September 29, 2006, that granted the motion of plaintiff City of New York (the City) for summary judgment to recover what the City describes as a portion of Ditmars Street and directed defendants to remove a fence as well as any property stored there, unanimously reversed, on the law, without costs, the motion denied and the matter remanded for further proceedings including a determination as to whether the deed for Lot 330 contained restrictions concerning the public right-of-way.

The facts are not in dispute. Defendant Ivio Mazzella and his wife reside at 235 Ditmars Street, also known as Block 5645, Lot 290, in the Bronx. They purchased Lot 290 in 1959 and subsequently built a home on that lot. In 1966, the Mazzellas acquired title to the lands under water adjacent to Lot 290. Thereafter, the Mazzellas filled in a portion of the lands under water creating Block 5645, Lot 330. The New York City Department of Ports and Terminals issued a permit for the landfill work.

After the Mazzellas filled in the property, the high water mark of Long Island Sound changed, moving outward approximately 150 feet. Defendants erected a fence on their property across the length of Ditmars Street approximately 18 feet from the high water line. The City asserts that defendants have obstructed and blockaded a "public street." The City commenced this action to recover the portion of that "public street" extending from the fence defendants erected to the new high water line. The City sought a judgment of possession as well as judgment for the reasonable value of defendants' use and occupancy of the premises and a proportionate share of the income from those storing boats on the property. Supreme Court granted summary judgment to the City. The court found that the landfill created an extension of Ditmars Street to the high water line of Long Island Sound and that therefore defendants were without lawful authority to erect a fence across that street. Defendants appealed.

As the motion court found, it is correct that "[a] perpetual right of way exists in favor of the public between the terminus of a street at the high-water line of navigable tidal waters and those waters" (*Matter of City of New York*, 216 NY 67, 75 [1915]). It is also correct that whenever the waters bounding the end of a street become displaced by earth or other filling, the easement of the street extends by operation of law to the end of the filling (*id.* at 75-76; *see also Knickerbocker Ice Co. v Forty-Second St. & Grand St. Ferry R.R. Co.*, 176 NY 408, 417-

419 [1903] [the general public has a right of passage where streets of the City of New York and navigable waters meet that the law extends over a wharf or bulkhead built at the end of a street]). Finally, it is also correct that when a municipality conveys property abutting a street or highway, there is a presumption that the municipality has no intention to part with that public street or highway (*see City of Albany v State of New York*, 28 NY2d 352 [1971]).

The City and Supreme Court extrapolate from these cases that: (1) the City never gave up title to Ditmars Street and (2) that once the Mazzellas filled in Lot 330, the law operated to extend Ditmars Street across the Mazzellas' property to the high water line. Reasoning that because the Mazzellas never held title to the portion of Ditmars Street that would cut through Lot 330, the court ruled that defendants must remove any obstruction to the public right-of-way, are not entitled to just compensation for that public easement and, instead, owe the City for the use and occupancy of the premises.

It is true that the public has a right-of-way to the water and that easement continues where the property owners have "destroyed the then existing connection of the street and the water" (*Matter of City of New York*, 216 NY at 77). However, while the public may have the right to an easement across the Mazzellas' property to access the navigable waters of Long Island Sound, this does not mean that the Mazzellas do not hold title to the entire portion of Lot 330, such that they ought to receive compensation for the exercise of that easement.

In *People v Steeplechase Park Co.* (218 NY 459 [1916]), a private amusement park in Coney Island completely blocked public access along the beach. Several grants conveyed the land the amusement park sat upon. All of these grants save one (the Huber grant) reserved public access to the shore. In the Huber grant, the State of New York had, on October 4, 1897, granted to one of the defendants certain lands under water in fee simple without restrictions concerning the public right-of-way or otherwise. The State of New York brought an action for an injunction requiring all the defendants, including Huber, to remove the obstructions to the shore. The motion court granted the injunction as to each defendant. With respect to Huber, Special Term held that although the grant to Huber was unqualified, it was subject by implication to the public's right to access the navigable waters. The Appellate Division, Second Department, affirmed, stating that the commissioners of the land office had exceeded their authority in granting Huber the lands under water in fee simple with no restrictions (165 App Div 231 [1914]).

The Court of Appeals affirmed, but only with respect to those defendants holding grants that had reserved the public right of access. The Court of Appeals reversed that part of the order of the Appellate Division, Second Department that concerned the Huber grant and held: "[w]here the state has conveyed lands without restriction intending to grant a fee therein for beneficial enjoyment, the title of the grantee except as against the rights of riparian or littoral owners, is absolute, and unless the grant is attacked for some reason recognized as a ground for attack by the courts or the use thereof is prevented by the Federal government, there is no authority for an inj[u]nction against its legitimate use." (218 NY at 479-480.) In so holding, the Court noted that one of the obstructions on the Huber property, a pier, had permission from the federal government's Secretary of War and the Department of Docks and Ferries of the City of New York (*id.* at 469).

The decision in *Steeplechase* was not unanimous. There was one concurrence and three judges dissented. The Chief Judge at the time, Judge Bartlett, concurred in the result. However, he wrote separately to emphasize that there was no "substantial interference with navigation" (*id.* at 481), but that a land grant of larger size might violate the public trust. The dissent (Judges Hogan, Cardozo and Seabury) believed that the grant to Huber contained an "implied reservation of public rights" (*id.* at 483).

The plurality and Judge Bartlett's concurrence in *Steeplechase* control. Accordingly, without an express reservation, a grant in fee simple of lands under water is absolute and the public has no implied rights (*cf. Appleby v City of New York*, 271 US 364, 399 [1926] [construing New York law and discussing *Steeplechase* at length, the United States Supreme Court held that the City had "parted with the sovereign regulation of navigation" because the deeds in question covered only the ends of the piers and not their sides]).[1]

Without having reserved the public's interest, the City cannot interfere with the Mazzellas' beneficial enjoyment without paying them just compensation. The City did not include the deed by which the Mazzellas acquired Lot 330 in the record.[2]

---

1. We take no position on the issue Judge Bartlett raised in his concurring opinion in *Steeplechase* except to note that a conveyance this small would not raise concerns that a violation of the public trust has occurred.

2. In 1976, several neighbors of the Mazzellas on City Island claimed a right-of-way over that portion of the street that defendants' fence blocked. They sued the Mazzellas unsuccessfully in *Dimino v Mazzella* (Sup Ct, Bronx County, Aug. 21, 1978, McCooe, J., index No. 15307/76). The deed apparently was a part of the record in that case because the decision of Justice William P.

Consequently, any conditions under which the Mazzellas hold the property remain at issue.

It is apparent the City did not include the deed because it assumed the public has the right to access the waterfront regardless of the language of the deed. As the plurality holding in *Steeplechase* indicates, this was an incorrect assumption. The cases the City cites do not contravene *Steeplechase*. The City relies upon *City of Albany v State of New York* (28 NY2d 352, 357 [1971], *supra*), to argue that it held title to Ditmars Street by operation of law. However, that case is not relevant because here, the Mazzellas are not claiming title to Ditmars Street, but rather to a filled in lot at the foot of Ditmars Street. The City still retains title to Ditmars Street itself. *Matter of City of New York* (216 NY at 78), upon which the City primarily relies, is inapplicable because the land grant in that case contained a reservation for public access and still the City of New York had to provide just compensation to the property owner. The Court of Appeals in recognizing that the public had an easement, specifically stated "[t]he public have this easement of passage merely and cannot in appropriating or exercising it destroy or seize without compensation other or additional property rights" (*id.* at 76).

Likewise, *People v Lambier* (5 Denio 9 [Sup Ct, NY County 1847]) did not involve a sale of lands under water, but rather a landowner filling in lands under water at the edge of his fee. Nor is *Knickerbocker Ice Co. v Forty-Second St. & Grand St. Ferry R.R. Co.* (176 NY 408 [1903], *supra*), to the contrary. In that case, the plaintiff had brought an action to restrain defendant railroad company and others from constructing a bulkhead at the foot of West 43rd Street. There, the Court of Appeals sustained the City of New York's right to extend 43rd Street into the Hudson River, construing the deed at issue to convey merely wharfage rights rather than an absolute fee. In addition, the City was later required to compensate the plaintiff for the loss of those rights (*see American Ice Co. v City of New York*, 217 NY 402, 412 [1916]).

*Matter of City of New York (Sealand Dock & Term. Corp.)* (29 NY2d 97 [1971]), in which the plaintiffs were only entitled to nominal damages is distinguishable because in that case the State of New York deeded the lands under water "on the *express condition* that they would set aside public streets giving access to the waterfront 'forever'" (*id.* at 101 [citation omitted]). Thus, in *Sealand Dock & Term. Corp*, the plaintiff had a

McCooe, refers to certain "deeds" and states that they were "silent as to any express easement on behalf of any plaintiff."

restricted grant. Here, the City has given no indication that the deed conveying the property to the Mazzellas contained a restriction. Also, as in *Steeplechase*, the Mazzellas purchased the property from the City for valuable consideration and filled it in at their own expense with permission of the City. Thus, because the City has not provided a deed containing restrictions, it has failed to establish a prima facie case for summary judgment.

Because of this determination, we need not reach the issue of abandonment that defendants raised. Were we to reach it, we would reject defendants' argument because Highway Law § 205 (1) does not apply to a street on lands formerly under water that filling created (*Sealand Dock & Term. Corp*, 29 NY2d at 102). Concur—Tom, J.P., Buckley, Sweeny and Moskowitz, JJ.